UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:	Case No. 19-48360

KELLY ROSE SPANABEL,	Chapter 7

                Debtor.	Judge Thomas J. Tucker
_____/

ANDREW R. VARA,
UNITED STATES TRUSTEE,

                Plaintiff,

v.	Adv. No. 19-4397

KELLY ROSE SPANABEL,

                Defendant.
_____/

**OPINION AND ORDER DENYING THE DEFENDANT'S MOTION TO DISMISS**

**I. Introduction**

      In this adversary proceeding, the Plaintiff United States Trustee objects to the Defendant Chapter 7 Debtor's discharge, on several grounds under 11 U.S.C. § 727(a). The case now presents the question whether new and amended claims in an amended complaint relate back to the date of the original complaint under Fed. R. Civ. P. 15(c)(1)(B). Also before the Court are questions whether the amended complaint states plausible claims for relief, and pleads fraud-based claims with the required particularity, under Fed. R. Civ. P. 12(b)(6) and 9(b).

      This adversary proceeding is before the Court on Defendant's motion to dismiss Plaintiff's first amended complaint (Docket # 46, the "Motion"). Plaintiff filed a response

objecting to the Motion, and Defendant filed a reply in support of the Motion.[1] The Court then required supplemental briefing by the parties, regarding certain specified issues.[2] After those supplemental briefs were filed,[3] the Court held a hearing on the Motion, by telephone, on July 15, 2020. The Court then took the Motion under advisement.

In Plaintiff's first amended complaint (Docket # 39, the "FAC"), Plaintiff alleges new claims, based at least in part on facts not alleged in the original complaint — Counts II and IV of Plaintiff's FAC (the objections to discharge based on 11 U.S.C. §§ 727(a)(3) and 727(a)(5)) (the "New Claims"). Plaintiff also alleges additional facts not alleged in the original complaint in support of the claims that were alleged in the original complaint — Counts I and II of the original complaint, which are now Counts I and III of the FAC (the objections to discharge based on 11 U.S.C. §§ 727(a)(2) and 727(a)(4)(A)) (the "Original Claims").

In her Motion, Defendant argues that the New Claims, and the Original Claims to the extent they are based on new facts alleged for the first time in the FAC, are untimely because the FAC was not filed until February 7, 2020, long after the deadline under Fed. R. Bankr. P. 4004(a) for objecting to discharge (*i.e.*, long after September 9, 2019). Defendant argues that the relation-back provision of Fed. R. Civ. P. 15(c)(1)(B) does not apply, because the New Claims and new facts asserted in the amended complaint do not "arise 'out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original [complaint.]'"[4] Plaintiff

---

[1] Docket ## 54, 58.

[2] Docket # 62.

[3] Docket ## 64, 67, 68.

[4] Def.'s Br. in Supp. of Mot. to Dismiss (Docket # 46) at 7 (citing Fed. R. Civ. P. 15(c)).

disputes Defendant's arguments, and argues that relation back under Rule 15(c)(1)(B) does apply.

Defendant also argues that certain of Plaintiff's claims in the FAC must be dismissed under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted; and because Plaintiff failed to plead the fraud-based claims in the FAC with the particularity required by Fed. R. Civ. P. 9(b). These federal civil rules apply in this adversary proceeding, under Fed. R. Bankr. P. 7012(b) and 7009, respectively.

For the reasons stated below, the Court will deny Defendant's Motion, in its entirety.

**II. None of Plaintiff's claims in the FAC are untimely.**

Civil Rule 15(c)(1)(B), which applies in this adversary proceeding under Fed. R. Bankr. P. 7015, states:

> **(c) Relation Back of Amendments.**
>
> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
> . . .
>
>    (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading.

Fed. R. Civ. P. 15(c)(1)(B).

Many courts, including the United States Court of Appeals for the Sixth Circuit, apply what is known as the "'logical relationship' test for determining whether a claim arises out of the same transaction or occurrence." *See Sanders v. First Nat'l Bank & Trust Co.*, 936 F.2d 273, 277 (6th Cir. 1991) (applying what is now Fed. R. Civ. P. 13(a)(1)(A), the compulsory counterclaim rule). Under this test, relation back of pleading amendments is liberally allowed:

3

> **The Supreme Court has interpreted the relation back doctrine liberally**, to apply if an amended pleading "relate[s] to the same general conduct, transaction and occurrence" as the original pleading. *Tiller v. Atl. Coast Line R.R. Co.*, 323 U.S. 574, 580–81, 65 S.Ct. 421, 89 L.Ed. 465 (1945) . . . . That liberal interpretation of the relation back rule reflects the rationale of Rule 15(c), which is that "a party who has been notified of litigation concerning a particular occurrence has been give[n] all the notice that statutes of limitations were intended to provide." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984).
>
> . . . .
>
> **The "logical relationship" standard contemplates a "liberal approach to the concept of same transaction or occurrence."** 7 Charles Alan Wright et al., *Federal Practice & Procedure* § 1653, at 410–11 (3d ed. 2001). It asks whether the facts underlying the alleged claims "share an aggregate of operative facts." *In re EMC Corp.*, 677 F.3d [1351,] 1359 [ Fed. Cir. 2012]. **For purposes of the logical relationship test, "all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence."** 7 Charles Alan Wright et al., *Federal Practice & Procedure* § 1653, at 409.

*Anza Tech., Inc. v. Mushkin, Inc.*, 934 F.3d 1359, 1368-69 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 849 (2020) (emphasis added).

The Sixth Circuit also takes a liberal approach to this "logical relationship" test. In *Sanders*, the court described the test this way: "Under this test, we determine whether the issues of law and fact raised by the claims are **largely the same** and whether **substantially the same** evidence would support or refute both claims." *Sanders*, 936 F.2d at 277 (emphasis added) (citation omitted).

Applying these standards, the Court concludes that the New Claims in Plaintiff's FAC relate back to the date of filing of Plaintiff's original complaint, and therefore are not untimely.

4

And the Original Claims, even as supported by additional facts alleged in the FAC, are fully timely as well.

The Court construes Plaintiff's original complaint and FAC liberally in favor of Plaintiff, as the Court must do in this context. The facts and the Original Claims, as alleged in the original complaint, set out a course of conduct by Defendant amounting to the intentional, fraudulent, and wide-ranging concealment of Defendant's financial circumstances, as they existed both before and after Defendant filed her bankruptcy petition.

The original complaint alleged that Defendant made many specific false statements under oath, in her bankruptcy schedules (including Schedules A/B, E/F, I, and J), in her statement of financial affairs, and in her Chapter 7 statement of current monthly income (also known as the means test form, Form 122A-1), all of which were filed after, but on the same day as, the bankruptcy petition, and also in Defendant's post-petition testimony given in the § 341 first meeting of creditors. The original complaint alleged, both in general terms and in numerous specifics, that Defendant fraudulently failed to disclose, concealed, and lied about all of the following aspects of Defendant's financial affairs: her property; her business interests; her income; the source(s) of her income; her household income (including that of her children that she claimed were her dependents in Schedule J); her expenses; the income of her long-time live-in partner, who owns her home and who is the father of her minor son; the nature of her employment; the identity and nature of her employer; and her job(s). The complaint alleged that Defendant has a long history in the horse racing industry as an owner, trainer, and jockey of race horses, has concealed her family business, Iacovacci Stables, and has concealed the income that Defendant and the members of her household make and have made, from racing horses and from

5

owning and selling horses.[5]  And the complaint alleged that this broad pattern of concealment and fraudulent non-disclosure by Defendant occurred after Defendant filed her bankruptcy petition.[6]

In the FAC, Plaintiff again alleged this same course of conduct by Defendant described above — basically, a wide-ranging and continuing pattern by Defendant of dishonestly and fraudulently concealing her income, income sources, property, business interests, and other financial affairs — and added more details.  The added details include allegations that Defendant's fraudulent course of conduct continued even after this adversary proceeding was filed, when Defendant allegedly lied to this Court under oath in her application for appointment of a pro bono attorney to represent her in this case, and allegedly lied in her deposition.[7]  In adding these additional details of Defendant's alleged fraudulent and continuing course of conduct, the FAC easily meets the "logical relationship" test, as defined by the cases cited above.

The same is true with respect to the New Claims added by the FAC.  Those New Claims, which object to Defendant's discharge under 11 U.S.C. §§ 727(a)(3) and 727(a)(5), are "logically related" to the Original Claims.  The two Original Claims objected to discharge based on claims that Defendant knowingly and fraudulently made false oaths under 11 U.S.C. § 727(a)(4)(A), and fraudulently concealed property of the Debtor and property of the bankruptcy estate under 11

---

[5]  *See* Compl. (Docket # 1) at ¶¶ 8-47, 54.

[6]  *See id.* (Docket # 1) at ¶¶ 18, 40, 50, 51.

[7]  The FAC alleges these new instances of the Defendant allegedly making a false oath under § 727(a)(4)(A), which occurred after the filing of Plaintiff's original complaint, in the Defendant's application for appointment of pro bono counsel, filed October 23, 2019, and later, in the Defendant's deposition testimony.  (*See* FAC (Docket # 39) at ¶¶ 86-116, 157.)

U.S.C. § 727(a)(2). The New Claims are logically related to the Original Claims, because the New Claims are based on *the same course of conduct* by the Defendant that was alleged in the original complaint.

The New Claim based on § 727(a)(5) is that Defendant has "failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the [D]ebtor's liabilities." *See* 11 U.S.C. § 727(a)(5). Like the original complaint, the FAC alleges that both pre-petition and post-petition, Defendant and her household, and her family business, including Defendant's long-time romantic live-in partner and father of her minor son, have earned substantially more money in the horse racing industry than Defendant disclosed.[8] Plaintiff's New Claim under § 727(a)(5) logically arises from this concealed income and the concealed family horse racing business, and given the substantial amount of concealed income that is specifically alleged by the FAC, this logically raises the question of how it is that Defendant lacks the assets to meet her liabilities.

The New Claim based on § 727(a)(3) is that Defendant "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the [D]ebtor's financial condition or business transactions might be ascertained," and that "such act or failure to act" was not "justified under all of the circumstances of the case." *See* 11 U.S.C. § 727(a)(3). The FAC alleges that Defendant either has concealed her financial records or failed to keep such records. That claim is logically connected to, and part of, Defendant's alleged course of conduct in concealing her income, assets, business interests, and financial history.

In this case, the course of conduct set forth in the original complaint is broad and wide-

---

[8] *See, e.g.*, *id.* at ¶¶ 10-34.

ranging enough that the New Claims clearly "arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original" complaint, within the meaning of Rule 15(c)(1)(B). Under the Sixth Circuit's formulation of the "logical relationship" test, the "issues of law and fact raised by" the New Claims are **"largely the same"** as those raised by the Original Claims, and "**substantially the same** evidence would support or refute both claims." *Sanders*, 936 F.2d at 277 (emphasis added) (citation omitted). The facts that support the Original Claims, alleged in the original complaint, and the facts that support the New Claims, alleged in the FAC, are "logically related events." *See Anza Tech., Inc.,* 934 F.3d at 1369 (citation omitted). And the facts and claims pled in Plaintiff's original complaint were sufficient to give Defendant ample and fair notice of the later-pled New Claims in the FAC.

### III. The FAC states plausible claims under Civil Rule 12(b)(6).

Defendant argues that the original complaint failed to state plausible claims under Civil Rule 12(b)(6). Those arguments are now moot, because the complaint was amended by the FAC. Defendant also argues that two of the Counts in the FAC — Count I (§ 727(a)(2)) and Count II (§ 727(a)(4)(A)) — fail to state plausible claims under Rule 12(b)(6), and fail to plead fraud with particularity as required by Civil Rule 9(b). The Court must reject these arguments.

### A. The standard applicable under Civil Rule 12(b)(6)

In *Wahrman v. Bajas* (*In re Bajas*), 443 B.R. 768 (Bankr. E.D. Mich. 2011), this Court discussed the standard for dismissal under Fed. R. Civ. P. 12(b)(6):

> A motion under Rule 12(b)(6) tests the "sufficiency of [a] complaint." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A court must examine the plaintiff's allegations and determine whether, as a matter of law, "the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."

*Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993). "[A] court considering a motion to dismiss under Rule 12(b)(6) 'must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff.'" *Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 605 (6th Cir.2005) (quoting *Inge v. Rock. Fin. Corp.*, 281 F.3d 613, 619 (6th Cir.2002) (citing *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir.1998))).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the United States Supreme Court revisited the standards that govern Rule 12(b)(6) motions. In doing so, the Court rejected "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561, 127 S.Ct. 1955 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Court explained,

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" **requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level,** . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]

*Id.* at 555–56, 127 S.Ct. 1955 (emphasis added) (citations and footnote omitted). The Court went on to hold that:

> stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest [grounds for relief]. Asking for plausible grounds to infer [a right to relief] does not impose a probability

9

requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [an entitlement to relief]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely."

*Id.* at 556, 127 S.Ct. 1955 (citation and footnote omitted). *See also Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (Fed.R.Civ.P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary[.]")[.]

More recently, in *Ashcroft v. Iqbal*, [556 U.S. 662,] 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court reiterated the "plausibility" requirement it announced in *Twombly*, and further explained that concept:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation"). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the

10

> doors of discovery for a plaintiff armed with
> nothing more than conclusions. Second, only a
> complaint that states a plausible claim for relief
> survives a motion to dismiss. Determining whether
> a complaint states a plausible claim for relief will,
> as the Court of Appeals observed, be a
> context-specific task that requires the reviewing
> court to draw on its judicial experience and
> common sense. But where the well-pleaded facts do
> not permit the court to infer more than the mere
> possibility of misconduct, the complaint has
> alleged-but it has not "show[n]"—"that the pleader
> is entitled to relief."
>
> [556 U.S. at 678-79,] 129 S.Ct. at 1949–50 (citations omitted).

*Wahrman,* 443 B.R. at 770-72.

**B. Count I of the FAC - denial of discharge under 11 U.S.C. § 727(a)(2)**

Count I, which seeks denial of discharge under § 727(a)(2), is a count Plaintiff pled in both the original complaint, and in the FAC. Section 727(a)(2) of the Bankruptcy Code states:

> (a) The court shall grant the debtor a discharge, unless–
> . . .
>
> > (2) the debtor, **with intent to hinder, delay, or defraud a creditor or an officer of the estate** charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or **concealed**, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–
> >
> > (A) property of the debtor, within one year before the date of the filing of the petition; or
> >
> > (B) property of the estate, after the date of the filing of the petition;

11 U.S.C. § 727(a)(2) (emphasis added). "This section encompasses two elements: 1) a disposition of property, such as concealment, and 2) 'a subjective intent on the debtor's part to

11

hinder, delay or defraud a creditor through the act disposing of the property.'" *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000) (citation omitted). "[A] debtor's intent may be inferred from the circumstances surrounding his objectionable conduct." *Id.* at 684 (internal quotation marks and citation omitted).

The § 727(a)(2) theory of the FAC is that Defendant has fraudulently concealed property. Defendant first argues that the FAC does not plausibly allege any concealment of any property by the Defendant before the date of filing her bankruptcy petition. As a result, Defendant argues, the FAC fails to state a claim under subsection (A) of § 727(a)(2).

To this extent, Defendant is correct. The only *pre-petition* concealment of property that is even arguably alleged by the FAC is the allegation in paragraph 15, that Defendant "registers her horses in the names of her children," rather than in her own name.[9] Paragraph 16 of the FAC alleges that by doing this, Defendant "keeps the horses out of reach of her creditors."[10] Read literally, these allegations are in the present tense, and therefore arguably do not actually allege that Defendant engaged in this concealment of her horse ownership *pre-petition*. But even putting that aside, the FAC does not actually allege that Defendant registered her horses in the names of her children with any intent to hinder, delay, or defraud any of her creditors. Rather, the FAC actually alleges a *different*, and more innocent, motive for doing this. The FAC alleges the Defendant "has a long history in the horse racing industry as a jockey, trainer, and owner of race horses," and that:

> 13. In the horse racing industry, the owner, trainer, and jockey each

---

[9] FAC (Docket # 39) at ¶ 15.

[10] *Id.* at ¶ 16.
12

receive a share of the purse when a horse wins.

14. An individual cannot be listed as a trainer, owner, and jockey of the same horse in a race.

15. **Because of this**, the Defendant registers her horses in the names of her children.[11]

These allegations are, in effect, that Defendant's intent in registering her horses in the names of her children is to enable her to earn more money from racing the horses than she could if she were the registered owner.[12] That motivation and intent, if anything, would be simply to increase Defendant's income, which could not, in and of itself, hinder, delay, or defraud her creditors.

For these reasons, the Court concludes that the FAC does not plausibly allege a claim for *pre-petition* concealment of "property of the debtor" under § 727(a)(2)(A).[13] But that does not doom Count I of the FAC. The FAC does allege a plausible claim under § 727(a)(2)(B), for post-petition fraudulent concealment by Defendant of property of the estate.

The FAC alleges that after filing her bankruptcy petition, Defendant made many specific false statements under oath, by which Defendant failed to disclose, and thereby concealed, her ownership of property that became property of the bankruptcy estate when Defendant filed her bankruptcy case. These many false statements allegedly were made by Defendant in her

---

[11] *Id.* at ¶¶ 13-15 (emphasis added).

[12] *See also id.* at ¶ 34 (Defendant put her horses in her minor son's name "to increase her winnings.")

[13] The Court notes that the FAC alleges, in paragraph 8, that Defendant "concealed income and assets from her creditors." (*Id.* at ¶ 8). But there is no allegation that this concealment occurred pre-petition, and no allegation that this concealment was done with the requisite fraudulent intent.

13

bankruptcy schedules (including Schedules A/B, E/F, I, and J), in her statement of financial affairs, in her Chapter 7 statement of current monthly income (also known as the means test form, Form 122A-1),[14] in Defendant's sworn testimony given in the § 341 first meeting of creditors, in Defendant's sworn deposition testimony, and under oath in Defendant's application for appointment of a pro bono attorney to represent her in this case. Among other things, the FAC alleges that post-petition, Defendant concealed her secret ownership of horses, her winnings from racing her horses, her horse racing business, and the money Defendant earns by buying and selling horses "as part of her business."[15] If these allegations are true, and liberally construing the FAC, it is plausible that this concealed property would be property of the bankruptcy estate.[16] And the FAC alleges that Defendant has concealed this property "with the intent to hinder, delay,

---

[14] All of these documents were filed by the Defendant-Debtor after the petition, but on the same day as the petition. And the Court notes that the § 727(a)(2)(B) concealment provision applies only to a debtor's concealment of property of the estate "after the date of the filing of the petition." But if the allegedly false statements in the papers filed by the Defendant on the petition date amount to a concealment of property of the estate, the Defendant's continuous failure to amend those papers to correct the concealment, after the petition date, would itself amount to a concealment under § 727(a)(2), under a "continuous concealment" theory. *Cf. Keeney v. Smith* (*In re Keeney*), 227 F.3d 679, 684 (6th Cir. 2000). In *Keeney*, the Sixth Circuit Court of Appeals recognized and applied the continuous concealment doctrine to bring a concealment that occurred prior to the one-year time limit of § 727(a)(2)(A) within the statute. The *Keeney* court described its application of the continuous concealment doctrine in this way: "'[A] concealment will be found to exist during the year before bankruptcy even if the initial act of concealment took place before this one year period as long as the debtor allowed the property to remain concealed into the critical year[.]'" 227 F.3d at 684 (citation omitted).

[15] *See id.* at pp. 2-8 ¶¶ 8-35, 40-45, 51, p. 8 ¶ 44-45, p. 9 ¶¶ 56-59, p. 10 ¶¶ 61-63, p. 12-13 ¶¶ 82-85, p. 18 ¶¶ 139-141.

[16] Because the horses and the horse racing business allegedly are property of the bankruptcy estate, the same would be true of the income obtained post-petition by Defendant from racing and selling her horses. *See* 11 U.S.C. § 541(a)(6). Such income, at least in part, could plausibly be deemed "[p]roceeds, product, . . . or profits of or from property of the estate," and not "earnings from services performed by" Defendant post-petition. *See id.*

14

or defraud a creditor."[17]

For these reasons, the Court concludes that Count I of the FAC states a plausible claim for denial of Defendant's discharge under § 727(a)(2)(B). So Count I will not be dismissed.

## C. Count III of the FAC - denial of discharge under 11 U.S.C. § 727(a)(4)(A)

Count III of the FAC, which seeks the denial of Defendant's discharge under § 727(a)(4)(A), was a claim pled in the original complaint, as Count II. Section 727(a)(4)(A) states:

> (a) The court shall grant the debtor a discharge, unless –
>
> > (4) the debtor knowingly and fraudulently, in or in connection with the case–
> >
> > (A) made a false oath or account;

11 U.S.C. § 727(a)(4).

> In order to deny a debtor discharge under [§ 727(a)(4)(A)], a plaintiff must prove by a preponderance of the evidence that: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case. *See Beaubouef v. Beaubouef* (*In re Beaubouef*), 966 F.2d 174, 178 (5th Cir.1992). Whether a debtor has made a false oath under section 727(a)(4)(A) is a question of fact. *See Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir.1987).
>
> "'Complete financial disclosure'" is a prerequisite to the privilege of discharge. *Peterson* [*v. Scott* (*In re Scott*)], 172 F.3d [959,] 967 [(7th Cir.1999)]. The Court of Appeals for the Seventh Circuit has explained that intent to defraud "involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin*, 150 F.3d 726, 728 (7th Cir.1998). A

---

[17] FAC (Docket # 39) at § 150.

> reckless disregard as to whether a representation is true will also satisfy the intent requirement. *See id.* "'[C]ourts may deduce fraudulent intent from all the facts and circumstances of a case.'" *Williamson*, 828 F.2d at 252 (citation omitted). However, a debtor is entitled to discharge if false information is the result of mistake or inadvertence. *See Gillickson* [*v. Brown* (*In re Gillickson*)], 108 F.3d [1290,] 1294 [10th Cir. 1997)]. The subject of a false oath is material if it "'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'" *Beaubouef*, 966 F.2d at 178 (citation omitted).

*Keeney*, 227 F.3d at 685–86.

As discussed in Part II of this Opinion, Defendant has argued that the new, additional facts in the FAC, which bolster Plaintiff's false oath count under § 727(a)(4)(A) in the original complaint, do not relate back to the date of the original complaint. As a result, Defendant argues, the Court may not consider these additional allegations in the FAC in deciding whether the FAC states a plausible claim under § 727(a)(4)(A). For the reasons stated in Part II of this Opinion, however, the Court has rejected Defendant's argument.

Defendant's only other argument, in support of Defendant's contention that Count III of the FAC does not state a plausible claim under Civil Rule 12(b)(6), appears to be that the FAC does not plead the § 727(a)(4)(A) claim with the particularity required by Civil Rule 9(b). The Court rejects that argument, for the reasons stated in the next part of this Opinion.

**IV. The FAC pleads fraud with sufficient particularity under Civil Rule 9(b).**

Of the four counts pled in the FAC, two have fraudulent intent as a necessary element of the claim: Plaintiff's §§ 727(a)(2)(A) and 727(a)(4) claims, pled respectively in Counts I and III of the FAC. With regard to these two claims, the Court concludes that the FAC satisfies the particularity pleading requirement of Civil Rule 9(b).

16

### A. The particularity standard applicable under Rule 9(b)

Fed. R. Civ. P. 9(b) states:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

This Court discussed Rule 9(b) in the case of *Gold v. Winget* (*In re NM Holdings Co., LLC*), 407 B.R. 232 (Bankr. E.D. Mich. 2009), and reiterates that discussion now:

> The Sixth Circuit has instructed courts to apply Rule 9(b) keeping in mind the liberal pleading approach of Civil Rule 8. *In Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988), the court stated:
>
>> In ruling upon a motion to dismiss under Rule 9(b) for failure to plead fraud "with particularity," a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8. Rule 8 requires a "short and plain statement of the claim" and calls for "simple, concise, and direct" allegations. Indeed, Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather the two rules must be read in harmony. Thus, it is inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud. This is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.
>
> (citations omitted). "When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007)("Bledsoe II"). The goals of Rule 9(b) are: (1) to "ensure[] that defendants have the specific notice necessary to prepare a response[;]" (2) to "prevent[] prospective plaintiffs from engaging in fishing expeditions to

uncover moral wrongs[;]" and (3) "to protect defendants' reputations against damage stemming from accusations of immoral conduct." *Bledsoe*, 501 F.3d at 503 n.11 (citing *Banca Cremi, S.A. v. Alex. Brown & Sons, Inc.*, 132 F.3d 1107, 1036 n.25 (4th Cir. 1997)(quoting *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549 (8th Cir. 1997)).

More recently, the Sixth Circuit described Rule 9(b)'s requirements as follows:

> In our recent decision in *Bledsoe II*, we reiterated our long-standing holding that, under Rule 9(b), a **plaintiff must "allege the time, place, and content of the alleged misrepresentation . . . the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."** As *Bledsoe II* also made clear, however, this requirement should be understood in terms of Rule 9(b)'s broad purpose of ensuring that a defendant is provided with at least the minimum degree of detail necessary to begin a competent defense. "Essentially, [a complaint] should provide fair notice to [d]efendants and enable them to 'prepare an informed pleading responsive to the specific allegations of fraud.'"

*United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007)) (internal citations omitted).

The requirements of Rule 9(b) may be relaxed when a plaintiff alleges facts particularly within the knowledge of the defendant. *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d at 680 (citations omitted). This principle has been applied in bankruptcy cases when a trustee is bringing the claim and as such is considered to be a "third party outsider to the allegedly fraudulent transaction which, initially, has only second hand information upon which to rely in framing issues." *Official Comm. of Unsecured Creditors, Inc. v. Asea Brown Boveri, Inc.* (*In re Grand Eagle Cos., Inc.*), 288 B.R. 484, 495 (Bankr. N.D. Ohio 2003) (citations omitted).

407 B.R. at 257-58 (emphasis added).

### B. The FAC satisfies Rule 9(b)

The FAC is extremely detailed. In it, Plaintiff has pled the claims under §§ 727(a)(2)(B) and 727(a)(4)(A) with sufficient particularity to satisfy Rule 9(b), under the Sixth Circuit's standard. This is especially so here, where the Rule 9(b) standard is relaxed, because the Plaintiff is "alleg[ing] facts particularly within the knowledge of the defendant." *Winget*, 407 B.R. at 258. As to the § 727(a)(2)(B) claim for fraudulent concealment of property by Defendant, the FAC alleges the property that was concealed in sufficient detail, and has alleged the time, place, and content of the many specific false statements and failures to disclose by Defendant, by which Defendant concealed the property. As to the false oath claim under § 727(a)(4)(A), the FAC alleges alleged the time, place, and content of Defendant's material false statements and omissions. And the FAC has described Defendant's alleged fraudulent scheme in great detail, as well as the injury resulting to date from that scheme. Finally, the FAC has sufficiently alleged Defendant's fraudulent intent. Such intent may be alleged generally under Rule 9(b); the rule does not require that intent or any other state of mind be alleged with particularity.

### V. Conclusion and Order

For the reasons stated above,

IT IS ORDERED that Defendant's Motion (Docket # 46) is denied, in its entirety.

**Signed on August 31, 2020**



/s/ Thomas J. Tucker
-----------------------------
Thomas J. Tucker
United States Bankruptcy Judge